UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI – CIVIL DIVISION
CASE NO.

Anna Lorca Boncoeur, f/k/a
Anna Adam,

       Plaintiff,

v.

Carmel at the California Club Property
Owners Association, Inc., Business
Law Group, P.A., and LM Funding, LLC,

       Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Anna Lorca Boncoeur f/k/a Anna Adam ("Plaintiff"), sues Defendants, Carmel at the California Club Property Owners Association, Inc., Business Law Group, P.A., and LM Funding, LLC, and brings this action on her own behalf and on behalf of all others similarly situated for statutory and actual damages, declaratory and injunctive relief as well as attorney's fees and costs, and as grounds therefore states:

### JURISDICTION, VENUE AND PARTIES

1.      This Court has subject matter jurisdiction of this case under 15 U.S.C. § 1692k of the Fair Debt Collection Practices Act ("FDCPA") and 28 U.S.C. §§ 1331, 1337(a) and 1367.

2.      Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. §§ 1391(b) and (c).

3.      Plaintiff, Anna Lorca Boncoeur f/k/a Anna Adam, is over the age of eighteen, and is otherwise *sui juris*.

1

4.      Plaintiff is a resident of Miami-Dade County, Florida, and owns the property located at 801 NE 199 Street, #207, Miami, FL 33179 (the "Property").

5.      Plaintiff is a natural person and consumer/debtor as defined in the applicable laws referenced herein.

6.      Defendant, Carmel at the California Club Property Owners Association, Inc., is a Florida not for profit corporation created under Florida Statutes Chapter 617 *et. seq.* (the "Association"), according to the Articles of Incorporation of Carmel at the California Club Property Owners Association, Inc., as amended, recorded at Official Records Book 11948 Page 1674 of the Public Records of Miami-Dade County, Florida.

7.      The Association's rights, duties, and obligations are set forth in, among other governing documents, the Declaration of Covenants, Restrictions and Easements for Common Areas, as amended, recorded at Official Records Book 11948 Page 1653 of the Public Records of Miami-Dade County, Florida ("Declaration").

8.      Defendant, Business Law Group, P.A. ("BLG"), is a Florida for profit corporation and law firm, acting on behalf of the Association and LM Funding, LLC, which engages in consumer debt collection on behalf of community associations throughout Florida, including the filing of liens and foreclosure actions on past due assessments.

9.      LM Funding, LLC ("LM Funding") is a Florida limited liability company which is in the business of acquiring consumer debt. LM Funding, itself and through its employees, agents, representatives and lawyers, regularly collects consumer debts allegedly owed to another throughout the State of Florida.

## GENERAL ALLEGATIONS

***Association, BLG, and LM Funding***

10.     BLG, LM Funding, and the Association, respectively, are persons as defined in the Florida Consumer Collection Practices Act ("FCCPA").

11.     BLG is a debt collector as defined by the FDCPA and FCCPA.

12.     LM Funding is a debt collector as defined by the FDCPA.

13.     Plaintiff has been the object of collection activity arising from consumer debt.

14.     The Association and LM Funding each authorized, ratified, consented to or acquiesced to BLG's actions.

15.     The principal purpose of BLG's business is the collection of debts. BLG regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, by consumers to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.

16.     BLG regularly uses the mails and other instrumentalities of interstate commerce in its collection or attempts to collect debts owed or due or asserted to be owed or due another by consumers.

17.     BLG has intentionally violated, by act or omission, a provision or provisions of the FDCPA and/or the FCCPA.

18.     The debts were in default at the time of BLG's collection efforts.

19.     BLG, LM Funding, and the Association have each intentionally violated by act or omission a provision or provisions of the FCCPA.

20.    The principal purpose of LM Funding's business is the collection of debts. LM Funding, through BLG, regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, by consumers to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.

21.    LM Funding, through BLG, regularly uses the mails and other instrumentalities of interstate commerce in its collection or attempts to collect debts owed or due or asserted to be owed or due another by consumers.

22.    LM Funding has intentionally violated, by act or omission, a provision or provisions of the FDCPA and/or the FCCPA.

23.    The debts were in default at the time of LM Funding's collection efforts.

24.    BLG is the real or actual agent of the Association where the Association acknowledges that BLG is acting as its agent in the debt collection matter asserted against Plaintiff. BLG undertook and accepted such undertaking by, among other things, corresponding with Plaintiff using the Association's name, and/or filing or causing to be filed the Claim(s) of Lien attached hereto, which was prepared by BLG and executed by a BLG employee as an "authorized agent" of the Association in order to collect on the debt owed at least in part to the Association, and the Association controlled BLG's day-to-day activities during the course of the agency.

25.    Alternatively, the Association held BLG out to the public as possessing sufficient authority to collect on the debt as defined herein, or knowingly permitted BLG to act as having such authority. Plaintiff, in dealing with BLG, knew of these facts, and acting in good faith, had reason to believe that BLG possessed the necessary authority to so act.

26.     The Association created the appearance of an agency relationship between itself and BLG, where, among other things, it corresponded with Plaintiff through BLG, and/or filed or caused to be filed the Claim(s) of Lien attached hereto, which were prepared by BLG and executed by a BLG employee as an "authorized agent" of the Association. Plaintiff relied on that representation and changed her position in reliance on the representation by, among other things, dealing with BLG directly instead of with the Association.

27.     The Association's voluntary actions placed BLG in such a situation that Plaintiff, a person of ordinary prudence, conversant with business usages and the nature of the assessment collection business, was justified in presuming that BLG had the authority to act on the Association's behalf in collecting the debt as defined herein and therefore dealt with BLG.

28.     Where BLG was acting as the agent of the Association, whether under actual or apparent authority, the knowledge of BLG is imputed to the Association.

29.     BLG is the real or actual agent of LM Funding where LM Funding acknowledges that BLG is acting as its agent in the debt collection matter asserted against Plaintiff. BLG undertook and accepted such undertaking by, among other things, corresponding with Plaintiff in an attempt to collect the amounts owed at least in part to LM Funding, and/or filing or causing to be filed the Claim(s) of Lien attached hereto, which were prepared by BLG and executed by a BLG employee as an "authorized agent" of the Association in order to collect on the debt owed at least in part to LM Funding, and LM Funding controlled BLG's day-to-day activities during the course of the agency.

30.     Where BLG was acting as the agent of LM Funding, the knowledge of BLG is imputed to LM Funding.

31.     All conditions precedent to this action have been performed, occurred, or been waived.

32.     Plaintiff has retained the undersigned counsel in this matter and is obligated to pay them reasonable attorneys fees' and costs.

33.     At all times material hereto, Plaintiff was the owner of the Property and a member of the Association. There are 456 units in the Association.

34.      Plaintiff's obligations as an owner and member of the Association are set forth in the Declaration.

35.     Within two years prior to the filing of this action, Defendants have been attempting to collect the alleged debt from Plaintiff.

*Assessments*

36.     As an owner, Plaintiff had the affirmative obligation under the Declaration, beginning at the time she became the owner of the Property, to timely pay maintenance assessments to the Association for the Property as set forth therein. *See* Exhibit "A," containing Article VII of the Declaration, "Covenant for Maintenance Assessments."

37.     Annual assessments were due in monthly installments on the first day of every month.

38.     The Declaration dictates that interest on assessments accrues at the rate of 10% per year and that, at the discretion of the Board of Directors, a late charge of $5.00 or five (5%) percent is due and payable for each month each such assessment is not paid when due. Exhibit "B" Article VIII, Section 1.

39.     All debts that Defendants sought to collect from Plaintiff referred to herein were for consumer debts in the form of condominium association maintenance assessments and other amounts as detailed below that Plaintiff allegedly owed only to the Association for the Property.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and all consumers in the form of a class defined as: (i) all persons to whom letters in the form of Exhibit "C" were sent (ii) in an attempt to collect a debt incurred for an association assessment (iii) which were not returned undeliverable by the U.S. Postal Service. Subclass A (the FDCPA class) includes the class members who were sent Exhibit "C" during the one year prior to the date of filing this action. Subclass B (the FCCPA class) includes those class members who were sent Exhibit "C" during the two years prior to the date of filing this action (the "Class"). Excluded from the Class are the Defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants, including without limitation, persons who are officers, directors, employees, associates or partners of BLG.

41.     The Class satisfies all the prerequisites of Federal Rule of Civil Procedure 23(a) for maintaining a class action.

42.     The Class is so numerous that joinder of all members is impracticable. Upon information and belief, hundreds of persons have received identical debt collection notices from Defendants that violate various provisions of the FDCPA and FCCPA.

43.     There are questions of law and fact common to the Class that predominate over questions affecting any individual Class member which include, without limitation:

  a.   Whether Exhibit "C" fails to accurately state the amount of the debt;

b.  Whether Defendants violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), 1692g(a)(1), 1692g(a)(2), and/or 1692g(a)(4);

c.  Whether Defendants violated various provisions of the FCCPA, including but not limited to, Florida Statutes §§559.72 (7) and/or (9);

d.  Whether Plaintiff and the Class have been injured by Defendants' conduct;

e.  Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

f.  Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

44.    Plaintiff's claims are typical of the Class where she possesses the same interest and suffered the same injury as the Class. All are based on the same facts and legal theories. Further, Plaintiff has no interest adverse or antagonistic to the interest of other members of the Class.

45.    Plaintiff will fairly and adequately protect the interests of the Class and has retained experienced counsel, experienced in handling actions involving unlawful practices under the FDCPA and FCCPA and competent in class action litigation. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

46.    This suit is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

47.    Defendants have acted on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

48.     A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein. Plaintiffs do not anticipate any unusual difficulties that would be likely to be incurred in the management of this class action.

49.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplicating the effort and expense that would arise from numerous individual actions. A class action will also provide for the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent class action certification, the individual members of the Class will continue to have their statutorily protected rights violated and suffer monetary damages, and if Defendants are permitted to continue without redress, they will continue to collect the rewards of their illegal actions.

### *LM Funding*

50.     On or about 2014, LM Funding acquired delinquent accounts for maintenance assessments owed to the Association.

51.     As part of that transaction, the Association was paid, in whole or in part, the outstanding assessments it was due, including the assessments ostensibly owed by Plaintiff.

52.     Fundamentally, LM Funding's business model is to pay the association all or part of the assessments it is owed, then add interest and late fees, attorneys' fees and costs, and other items, to the unit owner's account and seek those amounts, together with the assessments it paid to the association, from the unit owner.

53.     In order to increase the amount it can recover as profit, LM Funding had to amend the Association's Declaration, as it purported to do here.

9

### *The Purported First Amendment*

54.     Following an alleged meeting of the member unit owners on December 22, 2014, the Association, in a document prepared by a BLG attorney, purported to amend the Declaration to, among other things, increase the permissible interest rate on unpaid Common Assessments from 10 (10%) percent to the maximum legal rate, add Special Assessments and Specific Assessments as assessments upon which interest could be charged, and create for the first time the category of "Specific Assessments." *See* Exhibit "D".

55.     In addition, the First Amendment purported to increase the permissible late charge from five dollars ($5.00) or five (5%) percent of the amount of the delinquent installment, whichever is greater, to twenty-five dollars ($25.00) or five (5%) percent of the amount of the delinquent installment, whichever is greater (the "First Amendment"). *See* Exhibit "D".

56.     The First Amendment also attempted to grant the Association the option to elect both the remedy of an action at law against the Owner personally obligated to pay such assessments and foreclose the lien against the unit, where previously the Association had to elect only one or the other. *See* Exhibit "D".

57.     Upon information and belief, the First Amendment is legally invalid and void where the meeting of December 22, 2014 either did not take place, a quorum of the members was not obtained, and/or the requisite 66 2/3% of the voting power of the Members was not obtained.

58.     Further, where the First Amendment had a material adverse effect upon substantial rights of Plaintiff for the reasons set forth herein, even if the preceding requirements had been met (which they were not), the First Amendment was specifically prohibited by the Declaration absent prior written consent by Plaintiff and the other unit owners. *See* Exhibit "E".

59.     Notably, although the meeting ostensibly took place on December 22, 2014, the First Amendment was not executed by the Association until nearly one year later, on August 11, 2015. (It would not even be recorded until December 2, 2015.)

60.      By December 2014, and certainly by September 2016 (when BLG decided to pursue Plaintiff), the Association's rights to recover and collect the amounts at issue had long ago been transferred, in part in or in their entirety, to LM Funding and/or BLG.

### June 29, 2015 Communication and Attached Account Statement

61.     Although, upon information and belief, the Association no longer had the exclusive right to do so, on June 29, 2015, Florida Advanced Properties, a non-party to this case, sent Plaintiff a letter demanding payment in the amount of $7,092.50. Attached to that letter was a Statement (a ledger) (*see* Composite Exhibit "F") reflecting alleged activity from December 31, 2013 through and including June 1, 2015. That Statement reflected a beginning balance of $5,536.00 of entirely unknown origin and composition.

62.     As reflected in the June 29, 2015 Statement, Florida Advanced Properties and the Association sought to recover no interest or late fees whatsoever during that time. (Moreover, the amounts sought in the June 29, 2015 Statement would prove to be inconsistent with later amounts sought from Plaintiff. For example, the balance on December 31, 2013 was $5,536.00 according to the June 29, 2015 Statement. *See* Exhibit "F". In contrast, in the subsequent October 26, 2015 Statement (Exhibit "I"), the amount due on that same date is $5,451.00. In further contrast, and to further confuse the Plaintiff, in the June 13, 2017 Ledger, the amount due on that date had inexplicably jumped to $6,879.71.  *See* Exhibit "J".)

63.     Yet the Association was no longer the owner of the debt, either partially or in its entirety, in June 2015.

64.     Instead, six months after the Florida Advance Properties letter, and after preparing the First Amendment back in December 2014, BLG decided to pursue Plaintiff using their business model. To do so, BLG on December 2, 2015, recorded or caused to be recorded the void First Amendment.  *See* Exhibit "D."

**September 14, 2016 Communication: Notice of Intent to Record a Lien**

65.     On September 14, 2016, BLG, acting as the agent of the Association and/or of LM Funding, sent Plaintiffs a notice of intent to record a lien pursuant to Florida Statutes Ch. 718.121. Exhibit "C".

66.     No ledger was attached. (The amounts upon which this communication was based became apparent only when Plaintiff requested and received ledgers on June 13, 2017, and August 14, 2017 as set forth below.)

67.     BLG knew the amounts it sought to collect in the September 14, 2016 Communication sent to Plaintiff were improper and in violation of Florida law where, for example, it claimed, attempted or threatened to enforce a debt when it knew the legal right to do so did not exist. The knowledge attributable to BLG as to how its actions violated Florida law in this communication is listed in Exhibit "G" at "September 14, 2016 Communication – Notice of Intent to Record a Claim of Lien" (referred to hereinafter as "Exhibit "G" at September 14, 2016 Communication").

68.     Such knowledge is attributable to BLG where it was responsible for verifying with the Association and/or LM Funding the amounts owed by Plaintiff as well as the amounts BLG would be seeking to collect from Plaintiff.

69.     BLG was retained by the Association (Exhibit "C") and/or LM Funding as its counsel, and was authorized by the Association to engage in collection efforts to collect from

Plaintiff in the September 14, 2016 Communication the amounts the Association and/or LM Funding indicated were outstanding.

70.     The Association and/or LM Funding provided BLG with the amounts due upon which BLG relied on in preparing and executing the September 14, 2016 Communication, with the intent that BLG collect those amounts.

71.     BLG knew the legal right to collect those amounts did not exist for the reasons set forth herein and in Exhibit "G" at "September 14, 2016 Communication". BLG knew what dates the debts were incurred on, what each debt was comprised of, and what interest it was attempting to collect.

72.     BLG wrongfully threatened to take adverse action against Plaintiff via the September 14, 2016 Communication sent on the Association's and/or LM Funding's behalf by asserting its intent to record on a Claim of Lien on the Property based on the debt at issue as alleged herein.

*December 14, 2016 Communication: Notice of Intent to Foreclose Claim of Lien*

73.     On or about December 14, 2016, BLG, as the agent of the Association and/or LM Funding send correspondence to "Guillermo M. Mancebo, Esq." purporting to provide Plaintiff with its notice of intent to foreclose a Claim of Lien: "This letter is to inform you that a Claim of Lien has been filed against your client's Unit because your client has not paid the monthly assessments to the Association." Exhibit "H".

74.     Plaintiff had not, and has never, retained Mr. Mancebo as counsel.

75.     Plaintiff did not, and has never, orally or in writing, ever notified any of the Defendants that Mr. Mancebo was her attorney.

76.     Plaintiff is not related to Mr. Mancebo.

77.     As set forth herein, the information provided to Mr. Mancebo was false and Defendants knew or had reason to know it was false.

78.     The derogatory information contained in this communication affects Plaintiff's reputation for credit worthiness.

79.     Defendants knew or had reason to know that Mr. Mancebo did not have a business need for this information, where, among other things, they had no written advisement from Plaintiff that Mr. Mancebo was her attorney, their prior communication had been directly with Plaintiff, and their own records reflected that Plaintiff was the owner of the Property.

### *December 29, 2016 Claim of Lien and Ensuing Complaint for Lien Foreclosure*

80.     Despite its failure to provide to Plaintiff the requisite notice of intent to foreclose, on December 29, 2016, BLG, as the agent of the Association and/or of LM Funding and acting "pursuant to Section §718.116 of the Florida Statutes, as well as the Declaration of Condominium", recorded a Claim of Lien against the Property, in the amount of:

> $10,107.36 in unpaid regular assessments from Oct-2010 through Dec-2016 with each of those assessments having been due on the first day of each respective month, and with additional assessments coming due on the first day of each month after the filing of this Claim of Lien, and hereby claims a lien for this amount. Additionally, this Claim of Lien secures all unpaid assessments (including those which may have been accelerated), interest, late fees if any, costs and attorneys' fees which have come due and which may accrue subsequent to the date of this Claim of Lien.

81.     On May 19, 2017, BLG, on behalf of the Association and for the benefit of LM Funding, filed a lien foreclosure complaint in Miami-Dade County Court, Case No. 17-8027-CC-05.

82.     That complaint sought to recover amounts from Plaintiff which are legally uncollectible where: 1) the Association, and BLG acting on its behalf and with both the Association's and LM Funding's knowledge, ratification and acquiescence, could not file such

14

complaint on the Association's behalf where the Association was no longer the creditor or the only creditor of the debt; 2) notice of acceleration as required under the Declaration was never provided to Plaintiff; 3) the Association lacked the legal authority to amend the Declaration where it did not comply with the Declaration or Florida Statutes for such amendment; and 4) any attempt to retroactively collect interest and fees based on such amendment illegally impaired Plaintiff's contract with the Association.

### June 13, 2017 Ledger

83.   After being served with the complaint on May 25, 2017, and following several fruitless email communications with BLG to determine the amounts owed, Plaintiff requested, and BLG provided, a ledger.

84.   That ledger revealed that Plaintiff still had an outstanding balance in Defendants' records. It also confirmed interest charges and late fees had been retroactively posted from the date of the First Amendment, incorrect interest calculations, late fees increased to $25, and unauthorized charges (including accounting service, underwriting) had been added to the Ledger.

### Subsequent Proceedings in the Lien Foreclosure Case

85.   At some point unbeknownst to Plaintiff, the Association apparently advised the county trial court of its intention to voluntarily dismiss the complaint.

86.   On July 21, 2017, the trial court of its own volition dismissed the case, based on the Association's unilateral and ex parte representation, reserving jurisdiction to set the dismissal aside.

87.   Plaintiff was not provided notice of any communications between the Association and the trial court nor was she served with the order, despite having appeared in the case *pro se*.

88.     Subsequent to the dismissal, Plaintiff repeatedly requested an estoppel letter and ledger from BLG to verify the amount the Association claimed was outstanding on her unit.

89.     In response, on August 14, 2017, she received an updated ledger (Exhibit "K") but has not been provided with an estoppel letter. She remains at a complete loss as to the status of the debt, including but not limited to, whether the Association intends to re-institute the lien foreclosure proceedings such that the fear of losing her property continues, and does not know whether she is still personally being held liable for any amount. In short, Plaintiff is left with an outstanding debt and a Claim of Lien which may be foreclosed upon at any time.

90.     And yet, even though over a month has passed since the lien foreclosure case was dismissed, the lis pendens against her property has not been released, and continues to encumber her Property.

### COUNT I – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
**(against BLG and LM Funding)**
**September 14, 2016 Communication**

91.     Plaintiff incorporates by reference the allegations of the preceding paragraphs 1 through 72 and 80 through 90 as if the same were fully set forth herein.

92.     This communication violated 15 USC §1692d where BLG and LM Funding engaged in conduct the natural of consequence of which is to harass, oppress or abuse any person in connection with the collection of the debt, by wrongfully and without basis, threatening to record a Claim of Lien against the Property which could ultimately result in the loss of the Property through foreclosure proceedings.

93.     Defendants BLG and LM Funding have each violated 15 U.S.C. §1692e by advising Plaintiff and the class members in the Notice on Intent to Lien that: "If you dispute all or any portion of the debt, then we request that you complete and return the enclosed Dispute

Form, however, your dispute is not required to be in writing," by contradicting and overshadowing the validation notice requirements under 15 U.S.C. §1692c(c), §1692g(a)(4) and §1692g(b) which require and contemplate such disputes to be in writing. Defendants BLG and LM Funding further violated 15 U.S.C. §1692e by demanding exaggerated amounts that were false, deceptive, and misleading.

94.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount, or legal status of debt, where the amount sought was incorrect.

95.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692e(5) by threatening to take any action that cannot legally be taken or that is not intended to be taken, where Defendants collected or attempted to collect a debt which relied on the First Amendment as the basis for their debt collection activities against Plaintiff and class members and which attempted to collect interest retroactively from the date the Declaration was purportedly amended.

96.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692e(10) by using a deceptive means to collect or attempt to collect a debt where Defendants created and relied on the First Amendment as the basis for their debt collection activities against Plaintiff without the requisite votes or member approval, or otherwise in compliance with the Association's governing documents and Florida law.

97.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692f by using an unfair or unconscionable means to collect or attempt to collect a debt, where, among other things, BLG and LM Funding failed to disclose to Plaintiff that all or a portion of the debt was not owed to the Association but rather to LM Funding.

98.     Defendants BLG and LM Funding have each violated 15 U.S.C. §1692f(1) by collecting or attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law where interest at the rate sought by Defendants was not permitted under the Association's governing documents or Florida law.

99.     Defendants BLG and LM Funding have each violated 15 U.S.C. §1692g(a)(1) by failing to state the correct amount of the alleged debt.

100.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692g(a)(2) by failing to state the state the name of the creditor to whom the debt is owed.

101.    Defendants BLG and LM Funding have each violated 15 U.S.C. §1692g(a)(4) by contradicting and overshadowing the validation notice, and failing to advise Plaintiff that any dispute must be in writing, instead stating the opposite.

102.    By way of example and not limitation, Plaintiff identifies the preceding and further relies on Exhibit "G" at September 14, 2016 Communication" attached hereto demonstrating further violations.

WHEREFORE, Plaintiff, Anna L. Boncoeur f/k/a Anna Adam, requests a judgment be entered for herself and the Class against Defendants, Business Law Group, P.A. and LM Funding, LLC as follows:

A.      Declaratory relief that Exhibit "C" violates the FDCPA;

B.      Actual and statutory damages pursuant 15 U.S.C. §1692k;

C.      Actual and statutory damages for the class pursuant to 15 U.S.C. §1692k;

D.      Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k; and

E.      Such other and further relief as the Court deems just and equitable.

18

## COUNT II – FLORIDA CONSUMER COLLECTION PRACTICES ACT
### (against all Defendants - September 14, 2016 Communication)

103.    Plaintiff incorporates by reference the allegations of the preceding paragraphs 1 through 72 and 80 through 90 as if the same were fully set forth herein.

104.    The Association, LM Funding, and BLG, respectively, with this communication, violated Fla. Stat. §559.72(7) by willfully engaging in conduct which could reasonably be expected to abuse or harass Plaintiff and class members or any member of their families by threatening to record on a Claim of Lien against the Property, which could ultimately result in the loss of the Property through foreclosure proceedings. Such proceedings were in fact filed, leading to Plaintiff's incurring more unauthorized charges at her expense, charges which to date have not been removed from her account despite dismissal of the lien foreclosure case.

105.    This communication also violated Fla. Stat. §559.72(9) where it claimed, attempted or threatened to enforce a debt when the Association, LM Funding, and BLG, respectively, asserted the existence of that legal right when each knew the right did not exist. The communication stated: "The amounts stated herein represent the total in rem monetary obligation owed to the Association on the Unit." Exhibit "C". No mention is made of LM Funding, when the reality is that there are amounts owed to both LM Funding, as well as the Association, and the Association is no longer the only creditor.

106.    First, BLG could not assert a right to collect the debt in the Association's name where the Association no longer owned the debt in its entirety, and the Association, BLG and LM Funding each knew the right did not exist.

107.    Second, the total amounts due are mathematically incorrect.

108.    Third, the communication fails to state the monthly due date and amount of each assessment, as required by Florida Statutes §718.121(4).

109. Fourth, the communication fails to state the dates on which interest is being charged, as required by Florida Statutes §718.121(4).

110. By way of example and not limitation, Plaintiff identifies the preceding and further relies on Exhibit "G" at September 14, 2016 Communication" attached hereto demonstrating further violations.

111. As a result of Defendants' violations of the FCCPA, Plaintiffs have been damaged and are entitled to declaratory and injunctive relief, actual and statutory damages, costs and attorneys' fees. Further, pursuant to §599.77(2), based on the outrageousness of Defendants' conduct, punitive damages may be in order, as Defendants continue to attempt to collect alleged debts from Plaintiff and class members despite the fact that they have actual knowledge that said debts are not legitimate. Plaintiff respectfully requests that upon the showing of competent, substantial evidence, the Court permit Plaintiff to amend the Complaint to a claim for punitive damages.

WHEREFORE, Plaintiff, Anna L. Boncoeur f/k/a Anna Adam, requests a judgment be entered for herself and the Class against Defendants, Carmel at the California Club Property Owners Association, Inc., Business Law Group, P.A., and LM Funding, LLC as follows:

A.     Declaratory relief that Exhibit "C" violates the FCCPA;

B.     Enjoin Defendants from sending documents in the form of Exhibit "C" pursuant to the FCCPA;

C.     Actual and statutory damages pursuant to Florida Statutes §559.77;

D.     Actual and statutory damages for the class pursuant to Florida Statutes §559.77;

E.     Costs and reasonable attorneys' fees pursuant to Florida Statutes §559.77; and

F.     Such other and further relief as the Court deems just and equitable.

## COUNT III – FEDERAL DEBT COLLECTION PRACTICES ACT
### (against BLG and LM Funding)
### December 14, 2016 Communication

112.    Plaintiff incorporates by reference the allegations of the preceding paragraphs 1 through 39, 50 through 64, and 73 through 90 as if the same were fully set forth herein.

113.    This communication violated 15 USC §1692c(b) where BLG and LM Funding, without Plaintiff's prior consent given directly to either BLG or LM Funding, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, communicated, in connection with the collection of the debt at issue, with a person other than Plaintiff, her attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. *See also* Exhibit "H" at "December 14, 2016 Communication".

WHEREFORE, Plaintiff, Anna L. Boncoeur f/k/a Anna Adam, requests a judgment be entered for herself against Defendants, Business Law Group, P.A. and LM Funding, LLC as follows:

A.    Declaratory relief that Exhibit "H" violates the FDCPA;

B.    Actual and statutory damages pursuant 15 U.S.C. §1692k;

C.    Actual and statutory damages for the class pursuant to 15 U.S.C. §1692k;

D.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k; and

E.    Such other and further relief as the Court deems just and equitable.

## COUNT IV – FLORIDA CONSUMER COLLECTION PRACTICES ACT
### (against all Defendants - December 14, 2016 Communication)

114.    Plaintiff incorporates by reference the allegations of the preceding paragraphs 1 through 39, 50 through 64, and 73 through 90as if the same were fully set forth herein.

115.    This communication violated Florida Statutes §559.72(5) where it disclosed to a person other than Plaintiff or her family information affecting Plaintiff's reputation for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate need for the information or that the information was false.

WHEREFORE, Plaintiff, Anna L. Boncoeur f/k/a Anna Adam, requests a judgment be entered for herself against Defendants, Carmel at the California Club Property Owners Association, Inc., Business Law Group, P.A., and LM Funding, LLC as follows:

A.     Declaratory relief that Exhibit "H" violates the FCCPA;

B.     Actual and statutory damages pursuant to Florida Statutes §559.77;

C.     Actual and statutory damages for the class pursuant to Florida Statutes §559.77;

D.     Costs and reasonable attorneys' fees pursuant to Florida Statutes §559.77; and

E.     Such other and further relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 30, 2017

Respectfully submitted,

By: ___/s/ Thais Hernandez_____          By:___/s/ Alejandro Vilarello
Thais Hernandez, Esq.                    Alejandro Vilarello, Esq.
Florida Bar No. 180998                   Florida Bar No. 358177
The Law Firm of                          AVLaw@Vilarello.com
Thais Hernandez, Esq.                    Alejandro Vilarello, P.A.
*Counsel for Plaintiff*                  *Co-counsel for Plaintiff*
8004 N.W. 154 Street #414                16400 NW 59th Avenue, 2nd Fl.
Miami Lakes, Florida 33016               Miami Lakes, FL 33014
Tel: 786.923.0850                        Phone:    (305) 827-5665 x: 148
Fax: 305.570.2192                        E-Fax.    (786) 429-0957
Email: thernandezlaw@bellsouth.net       Cell:      (305) 299-5550